**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES DISTRICT COUNCIL 21 WELFARE FUND,<br>BRIAN COURTIEN, in his official capacity as a fiduciary,<br>2980 Southampton Road<br>Philadelphia, PA 19154<br><br>and<br><br>INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND,<br>7234 Parkway Drive<br>Hanover, MD 21076<br><br>*Plaintiffs*,<br><br>v.<br><br>EASTERN SOLAR GLASS<br>1008 Industrial Dr. Suite C<br>West Berlin, NJ 08091<br><br>and<br><br>LORI ASHCRAFT, an individual<br>7 Peter Hurd Way<br>Marlton, NJ 08053<br><br>*Defendants*. | Case no. CV-26-8973 |

**COMPLAINT**

Plaintiffs, by undersigned counsel, state as follows:

## JURISDICTION

1. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. §§ 1132, 1145; 29 U.S.C. § 185(a); and/or 28 U.S.C. § 1331. The claims asserted are all made under federal statutes or federal common law, but the supplemental jurisdiction of the Court under 28 U.S.C. § 1367(a) also extends to any claims that are found to lie under state law.

2. A copy of this Complaint has been served on the Secretary of Labor and the Secretary of Treasury of the United States by certified mail in accordance with 29 U.S.C. § 1132(h).

## VENUE

3. Venue lies in the Eastern District of Pennsylvania under 29 U.S.C. §§ 185(a) or 1132(e)(2).

## PARTIES

4. Plaintiff, International Union of Painters and Allied Trades District Council 21 Welfare Fund ("Welfare Fund"), is a trust fund established under 29 U.S.C. § 186(c)(5) and "multiemployer plan" and "employee (welfare) benefit plan" within the meaning of 29 U.S.C. § 1002(37), (1) and (3). The Welfare Fund maintains a place of business and is administered from an office located at 2980 Southampton Road, Philadelphia, PA 19154.

5. Plaintiff, Brian Courtien ("Courtien"), is a trustee and fiduciary of the Welfare Fund within the meaning of 29 U.S.C. § 1002(21) with respect to collection of contributions due the Welfare Fund and related matters. He has a business address as listed in the caption and is authorized to bring this action on behalf of all Trustees of the Welfare Fund and the Welfare Fund as an organization.

6. The Welfare Fund and Courtien are authorized collection fiduciaries and agents for:

(a) IUPAT District Council 21 Annuity Fund ("Annuity Fund"), a trust fund established under 29 U.S.C. § 186(c)(5) and "multiemployer plan" and "employee benefit plan" within the meaning of 29 U.S.C. §1002(37), (1) and (3);

(b) IUPAT District Council No. 21, an unincorporated labor organization within the meaning of Section 3(5) of the Labor Management Relations Act of 1947 (hereafter "LMRA"), as amended, 29 U.S.C. § 185, with its principal office located at 2980 Southampton-Byberry Road, Philadelphia, PA 19154. Effective June 1, 2022, IUPAT District Council 711 was merged into and succeeded by IUPAT District Council No. 21 and the combined entity is referred to herein as "Union." At all times relevant to this Complaint, the Union was the collective bargaining agent for the covered employees of Defendant, Leaks Construction LLC, for work performed in Pennsylvania and New Jersey; and

(c) IUPAT District Council No. 21 HRA Fund; IUPAT District Council 21 Training and Education Fund a/k/a Finishing Trades Institute of the Mid-Atlantic Region ("Apprenticeship Fund"); the National Apprenticeship Fund; the IUPAT DC 21 Scholarship Fund ("Scholarship Fund"); District Council 21 Labor Management Fund; the International Union of Painters and Allied Trades, District Council No. 21 Jobs Organization Program Trust Fund; Drywall Finisher Target Fund; IUPAT District Council No. 21 Vacation Fund; IUPAT District Council No. 21 Benevolent Fund; IUPAT District Council No. 21 Political Action Fund; and the IUPAT District Council No. 21 Industry Advancement Fund (altogether with Welfare Fund and Annuity Fund, "DC 21 PA Funds"); and

(d) DC21 NJ Vacation Fund f/k/a International Union of Painters and Allied Trades District Council 711 Vacation Fund; FTI of the Mid-Atlantic Region f/k/a District Council 711 Finishing Trades Institute; New Jersey Industrial Painters Association, Inc. Industry

Advancement Fund; DC21 NJ Labor Management Fund/Joint Trade Board f/k/a District Council 711 Labor Management Fund; IUPAT DC21 NJ PAC f/k/a IUPAT District Council 711 Political Action Fund; Safety Training Recognition Awards Program ("STARS"); District Council 711 Health and Safety Monitoring Fund; and District Council 21 Job Targeting Program f/k/a District Council 711 Job Targeting Program (altogether "DC 21 NJ Funds").

7. Plaintiff, International Painters and Allied Trades Industry Pension Fund ("Pension Fund") is a trust fund established under 29 U.S.C. § 186(c)(5). Its Trustees are the "named fiduciary," "plan administrator," and "plan sponsor" and each is an individual "fiduciary," within the meaning of 29 U.S.C. §§ 1102(a), 1002(16), (21), for the International Painters and Allied Trades Industry Pension Plan ("Pension Plan").

(a) The Pension Plan is a "multiemployer plan," "employee benefit plan," and "employee benefit pension plan" within the meaning of 29 U.S.C. § 1002(37), (2) and (3) which is administered and has its principal place of business in this district at the address for the Pension Fund in the caption of this Complaint.

(b) The Pension Fund is an authorized collection fiduciary and agent for the International Union of Painters and Allied Trades ("IUPAT"), International Painters and Allied Trades Industry Annuity Plan ("IPAT Annuity"), Labor Management Cooperation Fund ("LMCF"), Finishing Trades Institute ("FTI"), and International Political Action Committee ("IPAC").

8. The Welfare Fund is an authorized collection agent for the Pension Fund for signatory employers within the geographic jurisdiction of the Union (i.e., Pennsylvania and New Jersey). Under this arrangement, the Welfare Fund collects all amounts owed for the Pension Plan,

IPAT Annuity, LMCF, FTI, IPAC, and IUPAT (altogether with DC 21 PA Funds and DC 21 NJ Funds, "Funds") as required by the Labor Contract and forwards them on to the Pension Fund.

9. The Welfare Fund, Annuity Fund, Apprenticeship Fund, Scholarship Fund Pension Fund, and any Funds to the extent they qualify as qualified employee benefit plans under ERISA, are jointly or severally referenced as "ERISA Funds."

10. Defendant, Diversified Glass Films d/b/a Eastern Solar Glass, LLC" ("Defendant" or "Company") is a New Jersey company and an employer in an industry affecting commerce within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), (11), and (12); and NLRA §2(2), 29 U.S.C. §§ 152(2), (6) and (7). Company has a business office at 1008 Industrial Dr. Suite C West Berlin, NJ 08091. Company does business with the Funds that is sufficient to create personal jurisdiction over Company in this district and a substantial part of the events or omissions giving rise to the claims occurred from transactions with the Funds' office(s) in this district.

11. Individual Defendant, Lori Ashcraft ("Individual Defendant"). Ashcraft is registered as the managing partner and registered agent for service of Company with the New Jersey Department of Treasury Division of Revenue and Enterprise Services.

12. As Company Manager, Ashcraft is in possession of and control over plan assets that were required to be paid into the Funds.

12. The Trust Agreement defines Plaintiff Funds as "comprised of all assets and liabilities of the Welfare Fund, all contributions paid *or due to or for* the Welfare Fund pursuant to collective bargaining agreements . . ." (emphasis added).

13. Individual Defendant is a fiduciary of the Funds pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), which states that even for

individuals not explicitly named as fiduciaries, the power to allocate plan assets renders them subject to ERISA as de-facto fiduciaries. 29 U.S.C. § 1001, et. seq. 29 U.S.C. § 1002(21)(A).

14. Under ERISA, a fiduciary is required to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries… for the exclusive purpose of… providing benefits to [them]." 29 U.S.C. § 1104(a)(1).

15. Individual Defendant breached his duty when he withheld the assets of the Funds by refusing to make contributions due and owing under the CBA and Trust Documents. Hence, Ashcraft is jointly and severally liable with the Company for the portion of the total liability that is due to the Funds.

**COMMON FACTS**

16. At all times relevant to this action, the Defendant was bound by one or more collective bargaining agreement(s) (singly or jointly, "CBA") with the Union.

17. Company also agreed to abide by the terms of the Agreement and Declaration of Trust of the Welfare Fund ("Trust Agreement"), made between certain employers and employee representatives in an industry(ies) affecting interstate commerce to promote stable and peaceful labor relations, and the plan and other governing documents for the Welfare Fund. The Welfare Fund governing documents include, but are not limited to, the Welfare Fund's Collection Policy.

18. Under the CBA, Trust Agreements, plan documents, or other governing documents of the Funds, Defendant agreed:

(a) To make full and timely payment on a regular basis to the Funds;

(b) To file monthly remittance reports with the Funds detailing all

employees or work for which contributions were required under the CBA or Trust Agreement;

(c) To produce, upon request by the Funds, all books and records deemed necessary to conduct an audit of the Defendant's records concerning its obligations to the Funds;

(e) To pay liquidated damages, interest, audit costs, and all costs of litigation, including attorneys' fees, expended by the Funds to collect any amounts due as a consequence of the Defendant's failure to comply with its contractual and statutory obligations described in Subparagraphs (a), (b), and (c).

19. The CBA, Trust Agreements' governing documents, and Collection Policy also require Defendant to pay the Funds interest on late-paid contributions, liquidated damages, audit costs, and attorney costs and fees incurred in the cost of collection.

20. Based on an audit of Company's accounts dated February 22, 2024, the Company performed work covered by the CBA for at least the period from January 1, 2020 through December 31, 2022 but did not submit all contributions owed.

21. Based on a separate audit of Company's accounts dated February 25, 2026, the Company performed work covered by the CBA for at least the period from January 1, 2023 through December 31, 2024 but did not submit all contributions owed.

22. Based on the audit dated February 22, 2024, Company owes the Funds $116,955.42 in delinquent contributions for the period from January 1, 2020 through December 31, 2022 and at least $45,937.69 in interest, liquidated damages, and cost of audit.

23. Based on the audit dated February 25, 2026, Company owes the Funds $30,593.25 in delinquent contributions for the period from January 1, 2023 through December 31, 2024 and at least $12,219.42 in interest, liquidated damages, and cost of audit.

24. Together, the delinquent contributions from both audits total $147,548.67, and at least $58,157.11 in interest, liquidated damages, and audit costs. Combined, these amounts currently total $205,705.78 owed.

25. Demand was made upon Defendants for the delinquent amounts owed pursuant to the audit.

26. Defendants offered supplemental evidence resulting in the Funds making adjustment to the original audit amounts found owing, but to date, the Funds have not received payment of the outstanding contribution amounts.

27. The Funds were unsuccessful in their attempts to amicably resolve this delinquency with Company before filing a lawsuit.

28. All conditions precedent to this lawsuit or the relief it seeks have been satisfied.

**COUNT I –**

**CONTRIBUTIONS DUE UNDER CONTRACT**

29. The allegations of Paragraphs 1 through 27 are incorporated by reference as if fully restated.

30. Defendant failed to timely make complete contributions to the Funds as required by the CBA or Trust Agreements in a period not barred by any applicable statute of limitations or similar bar.

31. Based upon information currently available to the Plaintiffs, Company failed to pay amounts due under the CBA, Trust Agreements, and Plan in at least the amount of $116,955.42

in delinquent contributions for the period from January 1, 2020 through December 31, 2022 and at least $45,937.69 in interest, liquidated damages, and cost of audit, as well as $30,593.25 in delinquent contributions for the period from January 1, 2023 through December 31, 2024 and at least $12,219.42 in interest, liquidated damages, and cost of audit. These failures to pay violate the CBA, Trust Agreements, and 29 U.S.C. § 1145. Combined, the owed amount is at least $205,705.78.

32. The Plaintiffs have been damaged by Defendant's failure to make contributions as required by the CBA or Trust Agreements.

**WHEREFORE**, Plaintiffs ask that the Court:

(1) Enter judgment against the Defendant in favor of the Plaintiffs individually for the amount of contributions owed, together with liquidated damages, interest, and costs, including reasonable attorneys' fees incurred in this action or the collection and enforcement of any judgment, as provided in the CBA or Trust Agreements.

(2) Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

**COUNT II –**

**CONTRIBUTIONS DUE UNDER ERISA**

33. The allegations of Paragraph 1 through 31 are incorporated by reference as if fully restated.

34. Defendant failed to make contributions to the ERISA Funds in violation of 29 U.S.C. § 1145 in a period not barred by any applicable statute of limitations or similar bar.

35. Based upon information currently available to the Plaintiffs, Company failed to pay amounts due under the CBA, Trust Agreements, and Plan in at least the amount of $116,955.42

in delinquent contributions for the period from January 1, 2020 through December 31, 2022 and at least $45,937.69 in interest, liquidated damages, and cost of audit, as well as $30,593.25 in delinquent contributions for the period from January 1, 2023 through December 31, 2024 and at least $12,219.42 in interest, liquidated damages, and cost of audit. These failures to pay violate the CBA, Trust Agreements, and 29 U.S.C. § 1145. Combined, the owed amount is at least $205,705.78.

36. The Funds have been damaged by Defendant's violation of 29 U.S.C. § 1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(1) Enter judgment against Defendant in favor of the Funds individually for the contributions found due and owing, together with interest at the rate prescribed by 26 U.S.C. § 6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the plan document or statute, and reasonable attorneys' fees and costs incurred in this action and in connection with any proceeding to enforce or collect any judgment; and

(2) Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

Respectfully submitted,

SPEAR WILDERMAN, P.C.

Dated: November 14, 2026

BY: ______________________

Daniel J. Symonds
Attorney ID #337775
230 South Broad Street Suite 1650
Philadelphia, PA 19102
215.732.0101
dsymonds@spearwilderman.com
*Attorney for Plaintiffs*